# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| MICHAEL HENRY SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 17-0456-WS-M |
| | ) |
| COMCAST CORPORATION, et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

This matter is before the Court on motions to dismiss filed by defendants Helmsman Management Services ("Helmsman")[1] and Joy Howard. (Docs. 6, 7).[2] The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 6, 7, 24, 29), and the motions are ripe for resolution.

---

[1] Helmsman says that its correct name is Helmsman Management Services, L.L.C. (Doc. 6 at 1). Because the complaint cannot be amended by a defendant, the Court utilizes the name provided in the complaint.

[2] Helmsman drops a footnote in which it argues that defendant Liberty Mutual Insurance "should be dismissed" because it "is not an existing entity" and because the plaintiff has not properly served it. (Doc. 6 at 1 n.1). The first objection is curious, since Helmsman previously equated "Liberty Mutual Insurance" with "Liberty Mutual Insurance Company," an entity that it admits does exist, (Doc. 1 at 3 & n.2); indeed, Howard insists that she works for Liberty Mutual Insurance Company. (Doc. 7 at 10; Doc. 7-1 at 2). It is also curious in that Helmsman recognizes itself as a defendant even though the complaint omits "L.L.C." from its name, yet Helmsman purports to be confused by the comparable omission of "Company" from Liberty Mutual Insurance's name. Nor does Helmsman address the effect of Rule 15(c)(1)(C)(ii), which permits amendments to a complaint, complete with relation back, in the event of misnomer. *E.g., Wayne v. Jarvis*, 197 F.3d 1098, 1103 (11th Cir. 1999), *overruled in part on other grounds*, *Manders v. Lee*, 338 F.3d 1304 (11th Cir. 2003) (en banc). Both objections are curious in that Helmsman offers no authority for the proposition that it can seek dismissal of another defendant that has not sought dismissal for itself. Nor does counsel purport to represent anyone other than Helmsman and Howard. For all these reasons, to the uncertain extent Helmsman's footnote can be construed as a motion to dismiss Liberty Mutual Insurance as a defendant, the motion is **denied**.

After careful consideration, the Court concludes that the motions are due to be granted in part and denied in part.

## BACKGROUND

According to the *pro se* complaint, (Doc. 1-1 at 6-25), in May 2016 the plaintiff subscribed to Comcast/Xfinity for internet and phone service. A technician dispatched to accomplish installation permanently disabled the ethernet port on the plaintiff's laptop. The plaintiff had various difficulties seeking to rectify this situation, including unpleasant encounters with representatives of the entity defendants and unjustifiably high bills from Comcast/Xfinity.

## DISCUSSION

Helmsman and Howard assert that dismissal is appropriate under Rules 12(b)(5) and 12(b)(6); Howard additionally asserts that dismissal is appropriate under Rule 12(b)(2).

**I. Personal Jurisdiction.**

A defendant may move to dismiss based on "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2). "As a general rule, courts should address issues relating to personal jurisdiction before reaching the merits of a plaintiff's claims." *Republic of Panama v. BCCI Holdings S.A.*, 119 F.3d 935, 940 (11th Cir. 1997).

"A plaintiff seeking to establish personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (internal quotes omitted). "When a defendant challenges personal jurisdiction by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction," unless "the defendant's affidavits contain only conclusory assertions that the defendant is not subject to

2

jurisdiction." *Id*. (internal quotes omitted). "Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." *Meier ex rel. Meier v. Sun International Hotels, Ltd*., 288 F.3d 1264, 1269 (11th Cir. 2002); *accord Diamond Crystal Brands, Inc. v. Food Movers International, Inc*., 593 F.3d 1249, 1257 (11th Cir. 2010).

"A federal court sitting in diversity may exercise jurisdiction over a nonresident defendant to the same extent as a court of that state." *Ruiz de Molina v. Merritt & Furman Insurance Agency, Inc*., 207 F.3d 1351, 1355 (11th Cir. 2000). Alabama "extends the personal jurisdiction of Alabama courts to the limits of due process under the federal and state constitutions." *Ex parte Fidelity Bank*, 893 So. 2d 1116, 1121 (Ala. 2004); *accord* Ala. R. Civ. P. 4.2(b). Due process under the Alabama Constitution is in this respect co-extensive with that under the federal Constitution. *Ex parte Georgia Farm Bureau Mutual Automobile Insurance Co*., 889 So. 2d 545, 550 (Ala. 2004).

Personal jurisdiction can be either general or specific. "General personal jurisdiction arises when a defendant maintains continuous and systematic contacts with the forum state even when the cause of action has no relation to those contacts." *HomeBingo Network, Inc. v. Chayevsky*, 428 F. Supp. 2d 1232, 1241 (S.D. Ala. 2006) (internal quotes omitted). Howard has testified by declaration that she is not a resident of Alabama but of Georgia, that she owns no real property in Alabama, that she maintains no bank accounts in Alabama, that she conducts no personal business in Alabama, that she has no mailing address in Alabama, that she pays no taxes to the state of Alabama, and that she has not been to Alabama since 2013. (Doc. 7-1 at 3). Howard's declaration carries her burden, shifting to the plaintiff the burden to present evidence supporting general jurisdiction. Because he has presented nothing in this regard, it is clear that Howard is not subject to general jurisdiction in this state.

"Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum." *PVC Windoors, Inc. v. Babbitbay Beach Construction, N.V.*, 598 F.3d 802, 808 (11th Cir. 2010) (internal quotes omitted). According to the complaint, Howard contacted the plaintiff (an Alabama resident), attempted to frustrate his pleas for relief, attempted to defraud him, resorted to subterfuge in order to reduce the amount he would be paid, dispatched an investigator to look at his laptop and wiring, and did everything in her power to mislead the plaintiff and to defeat his effort to obtain compensation, her conduct constituting the tort of outrage/intentional infliction of emotional distress. (Doc. 1-1 at 6, 8, 15-16, 20).[3] Howard agrees that, from Georgia, she spoke with the plaintiff over the phone and sent him e-mails and a letter, all in connection with his claims regarding laptop damage and service visits, but she denies ever visiting Alabama in connection with the plaintiff's claims. All her contact with the plaintiff was in her role as claims adjuster for Liberty Mutual Insurance Company. (Doc. 7-1 at 2).

"A defendant is constitutionally amenable to a forum's specific jurisdiction if it possesses sufficient minimum contacts with the forum to satisfy due process requirements, and if the forum's exercise of jurisdiction comports with traditional notions of fair play and substantial justice." *Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534, 1545 (11th Cir. 1993) (internal quotes omitted). "To constitute constitutionally minimum contacts, the defendant's contacts with the applicable forum must satisfy three criteria. First, the contacts must be related to the plaintiff's cause of action or have given rise to it." *Id*. at 1546. "Second, the contacts must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum ..., thus invoking the benefits and protections of its laws." *Id*. (internal quotes omitted). "Third, the

---

[3] "The tort of outrage is the same cause of action as intentional infliction of emotional distress." *Wilson v. University of Alabama Health Services Foundation, P.C.*, ___ So. 3d ___, 2017 WL 6397654 at *1 n.1 (Ala. 2017) (internal quotes omitted).

4

defendant's contacts with the forum must be such that [the defendant] should reasonably anticipate being haled into court there." *Id*. (internal quotes omitted).

Howard, (Doc. 7 at 6), correctly notes that she cannot be subjected to personal jurisdiction in Alabama simply because her employer might be subject to such jurisdiction. *Ex parte Kohlberg Kravis Roberts & Co.*, 78 So. 3d 959, 974 (Ala. 2011); *accord Calder v. Jones*, 465 U.S. 783, 790 (1984) ("Petitioners are correct that their contacts with California are not to be judged according to their employer's activities there. ... Each defendant's contacts with the forum State must be assessed individually."). Of course, "[o]n the other hand, [defendants'] status as employees does not somehow insulate them from jurisdiction." *Id*.

Howard relies on *Pierce v. Heyman*, 480 So. 2d 1185 (Ala. 1985), to refute personal jurisdiction. In *Pierce*, the plaintiff sued, *inter alia*, several employees of the plaintiff's insurer. The claims asserted against the non-resident individuals are not identified in the opinion, but the Alabama Supreme Court noted that, from the allegations of the complaint and its attached exhibits, "it appears that they had valid justification to request and obtain additional records and information as to the date of what they alleged to be a second injury before paying the claim." *Id*. at 1186. The defendants presented affidavits stating that their communications with the plaintiff were not for personal business but were made within the scope of their employment in the claims department of the insurer, which was not their alter ego. *Id*. at 1185. The *Pierce* Court, relying on *Thames v. Gunter-Dunn, Inc*., 373 So. 2d 640 (Ala. 1979), concluded that personal jurisdiction would not lie under these circumstances. 480 So. 2d at 1186-87.

Howard reads *Pierce* for the proposition that "a claims handler does not submit to personal jurisdiction in Alabama merely by working on an Alabama-based insurance claim." (Doc. 7 at 7). Courts construing *Pierce* and *Thames*, however, have construed them differently. The Supreme Court in *Calder* distinguished between "untargeted negligence," which will not support personal jurisdiction, and "intentional, allegedly tortious, actions ... expressly aimed at" the

5

forum state, which will. 465 U.S. at 789. The Alabama Supreme Court has characterized *Pierce* and *Thames* as involving only untargeted negligence; when the defendant's alleged conduct is intentional, tortious and directed specifically at an Alabama resident, personal jurisdiction is warranted. *Duke v. Young*, 496 So. 2d 37, 40 (Ala. 1986) (conspiracy to conceal a material fact during negotiations with Alabama resident); *accord Ex parte Kohlberg*, 76 So. 3d at 975-76 (complicity in fraud for purpose of acquiring Alabama corporation with physical presence in Alabama); *Sudduth v. Howard*, 646 So. 2d 664, 668-69 (Ala. 1994) (participation in scheme to defraud and deceive potential Alabama investors); *Lowry v. Owens*, 621 So. 2d 1262, 1267 (Ala. 1993) (fraudulent misrepresentations to an Alabama resident).

The complaint alleges that Howard contacted the plaintiff in Alabama (something she admits she did repeatedly). The complaint alleges that Howard, through those contacts, misled the plaintiff, attempted to defraud him, and engaged in conduct amounting to the tort of outrage/intentional infliction of emotional distress. Howard does not offer to explain how such allegations could implicate only untargeted negligence rather than intentional tortious conduct directed specifically towards an Alabama resident, and the Court will not cast about for such an explanation on her behalf. What was said in *Calder* would appear to apply here: "In this case, petitione[r] [is a] primary participan[t] in an alleged wrongdoing intentionally directed at [an Alabama resident], and jurisdiction over [her] is proper on that basis." 465 U.S. at 790.[4]

Howard posits rather than demonstrates that the assumption of personal jurisdiction over her, even if she has miminum contacts with Alabama, would offend traditional notions of fair play and substantial justice. (Doc. 7 at 9-10). Even if it is possible for the assumption of personal jurisdiction over a defendant

---

[4] In her reply brief, Howard complains that the plaintiff has presented no evidence to counter her declaration. (Doc. 29 at 3-4). Because, as discussed in text, Howard's declaration does not demonstrate the absence of personal jurisdiction, no burden fell to the plaintiff to counter her declaration with evidence of his own.

6

who intentionally directs tortious activity against a resident of another state to give such offense, Howard has failed to show such offense in this case. Alabama plainly has an interest in redressing torts against its citizens, and resolving all the plaintiff's claims in a single forum is clearly more convenient and effective. Howard says she will be burdened by litigation in Alabama, but she provides no specifics to bolster her position; that she is represented by the same counsel as is Helmsman suggests that she personally will bear little burden in this action. *See generally Coastal Builders, Inc. v. Ficon Fabricators, Inc.*, 2005 WL 1005135 at *3-5 (S.D. Ala. 2005) (discussing the factors relevant to the inquiry and a defendant's considerable burden in showing they disfavor personal jurisdiction).

In summary, Howard is not entitled to dismissal for want of personal jurisdiction.

**II. Sufficiency of Service.**

A defendant may move to dismiss based on "insufficient service of process." Fed. R. Civ. P. 12(b)(5). Howard argues that service on her was insufficient because the plaintiff attempted to serve her by certified mail at Helmsman's Boston office rather than on her personally or at her dwelling, (Doc. 7 at 11), and she denies by declaration that she has authorized anyone in Boston to accept service on her behalf. (Doc. 7-1 at 3). The difficulty is that Howard has identified no evidence regarding the plaintiff's attempt to serve her. As this Court and others have held, "the defendant first bears the burden of producing affidavits that, in non-conclusory fashion, demonstrate the absence of" good service.[5]

---

[5] *Bell v. Integrated Health Services, Inc.*, 2007 WL 274364 at *2 (S.D. Ala. 2007); *accord Lowdon PTY Ltd. v. Westminster Ceramics, LLC*, 534 F. Supp. 2d 1354, 1360 (N.D. Ga. 2008); *Fresh v. Diamond Development Investments, Inc.*, 2014 WL 3867596 at *4 (N.D. Ga. 2014); *Carthen v. Baptist South Medical Center*, 2011 WL 855279 at *2 (M.D. Ala. 2011).

Because Howard has not met her threshold burden, her motion to dismiss under Rule 12(b)(5) must fail.

The complaint was filed in state court on July 13, 2017, (Doc. 1-1 at 6), and the plaintiff attempted to serve Helmsman by certified mail in September 2017, (Doc. 6-2 at 2-3), prior to the October 11, 2017 removal of the action. When, as here, service of process is attempted prior to removal from state court, the sufficiency of service must be measured by state law governing service of process. *Usatorres v. Marina Mercante Nicaraguenses, S.A.*, 768 F.2d 1285, 1286 n.1 (11th Cir. 1985).

Helmsman has presented evidence that the certified mailing was addressed to Helmsman at its Boston address, but without designation of any human recipient. (Doc. 6-2 at 2-3). Under Alabama law, an LLC such as Helmsman must be served "by serving an officer, a partner (other than a limited partner), a managing or general agent, or any agent authorized by appointment or by law to receive service of process." Ala. R. Civ. P. 4(c)(6). Service on an LLC may be accomplished by certified mail, but in that event "the addressee shall be a person described in the appropriate subdivision." *Id*. Rule 4(i)(2)(B)(i), (ii). As the Alabama Supreme Court has recently noted, "we are clear to the conclusion that service on a corporation or business entity cannot be perfected by certified mail addressed merely to the entity itself." *Ex parte LERETA, LLC*, 226 So. 3d 140, 145 (Ala. 2016). Because the addressee of the plaintiff's certified mailing is Helmsman rather than a person, the plaintiff has not perfected service on Helmsman.

As noted, this action was removed from state court on October 11, 2017. Pursuant to the interplay between 28 U.S.C. § 1448 and Rules 4(m) and 81(c), the plaintiff had 90 days from that date, or until January 9, 2018, to perfect service.[6]

---

[6] *E.g., Wallace v. Microsoft Corp.*, 596 F.3d 703, 706-07 (10th Cir. 2010); *Rice v. Alpha Security, Inc.*, 556 Fed. Appx. 257, 261-62 (7th Cir. 2014); *Medlen v. Estate of Meyers*, 273 Fed. Appx. 464, 470 (6th Cir. 2008).

Helmsman, however, moved to dismiss under Rule 12(b)(5) on October 18, 2017.[7] Its motion therefore must be denied as premature. *E.g., King v. Taylor*, 694 F.3d 650, 661 (6th Cir. 2012); *McGinnis v. Shalala*, 2 F.3d 548, 551 (5th Cir. 1993); *Hall v. O'Clallaghan*, 2013 WL 12141247 at *2 (D. Neb. 2013) (collecting cases).[8]

The fact remains that the plaintiff has not properly served Helmsman. Had the plaintiff shown good cause for this failure, the Court would be required by Rule 4(m) to afford him additional time to perfect service, but he offers no explanation for not serving Helmsman properly. Nevertheless, the Court has discretion under Rule 4(m) to permit additional time to effect service even absent a showing of good cause. The Court concludes that such an extension of time is appropriate in this case.[9]

In summary, neither Howard nor Helmsman is entitled to dismissal for insufficiency of service of process.

### III. Failure to State a Claim.

A defendant may move to dismiss based on "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Howard and Helmsman

---

[7] Due to questions regarding the Court's subject matter jurisdiction, along with the plaintiff's request for additional time, Helmsman's motion did not become ripe until early January 2018.

[8] Even were Helmsman's Rule 12(b)(5) motion to be granted, any dismissal necessarily would be without prejudice and not, as Helmsman requests, (Doc. 6 at 7), with prejudice. Service of process is a jurisdictional requirement, and without such service the Court lacks personal jurisdiction over a defendant. *Hemispherx Biopharma, Inc. v. Johannesburg Consolidated Investments*, 553 F.3d 1351, 1360 (11th Cir. 2008). Thus, just as dismissal for lack of personal jurisdiction must be without prejudice (because it does not preclude litigation in an appropriate forum), *Posner v. Essex Insurance Co.*, 178 F.3d 1209, 1221 (11th Cir. 1999), any dismissal for insufficient service of process is without prejudice. *E.g., Prewitt Enterprises, Inc. v. Organization of Petroleum Exporting Countries*, 353 F.3d 916, 920 (11th Cir. 2003).

[9] The Court would reach the same conclusion even were Helmsman's Rule 12(b)(5) motion not premature.

characterize the sole claim against them as one for outrage/intentional infliction of emotional distress, and they argue that no such claim lies against them because: (1) Alabama law permits such a claim only against the insurer of the plaintiff (which Helmsman and Howard were not); and (2) the allegations of the complaint are insufficiently stark to implicate the tort. (Doc. 6 at 2, 5-7; Doc. 7 at 2, 12-14).[10]

"The four elements of the tort of intentional infliction of emotional distress, which is also known as the tort of outrage, are: (1) the actor intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from his conduct; (2) the conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff distress; and (4) the distress was severe." *Martin v. Hodges Chapel, LLC*, 89 So. 3d 756, 763 (Ala. Civ. App. 2011) (internal quotes omitted); *accord Harris v. McDavid*, 553 So. 2d 567, 569 (Ala. 1989).

"By extreme we refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Horne v. TGM Associates, L.P.*, 56 So. 3d 615, 630 (Ala. 2010) (internal quotes omitted). "This Court has consistently held that the tort of outrage is a very limited cause of action that is available only in the most egregious circumstances." *Thomas v. BSE Industrial Contractors, Inc.*, 624 So. 2d 1041, 1044 (Ala. 1993). "The tort of outrage … is so limited that this Court has recognized it in regard to only three kinds of conduct: (1) wrongful conduct in the family-burial context [citation omitted]; (2) barbaric methods employed to coerce an insurance settlement [citation omitted]; and (3) egregious sexual harassment [citation omitted]." *O'Rear v. B.H.*, 69 So. 3d 106, 118 (Ala. 2011) (internal quotes omitted).

---

[10] Howard drops a footnote asserting that Alabama does not permit any tort claim against a claims handler. (Doc. 7 at 13 n.6). Howard's sole authority for this proposition addresses only the availability of such legal claims *to the insured*. Because, as Howard stresses, the plaintiff is not the insured, her argument need not be considered further.

Helmsman and Howard assert that "Alabama law only permits recovery" for outrage in these specific categories. (Doc. 6 at 5; Doc. 7 at 12). According to the Alabama Supreme Court, however, the listing "is not to say ... that the tort of outrage is viable in only the three circumstances noted" above. *Little v. Robinson*, 72 So. 3d 1168, 1172-73 (Ala. 2011) (noting that liability was upheld in *O'Rear* even though the facts fell within none of the three categories). Therefore, a statement "that the tort of outrage is limited to three situations is an incorrect statement of the law." *Wilson v. University of Alabama Health Services Foundation, P.C.*, ___ So. 3d ___, 2017 WL 6397654 at *3 (Ala. 2017).[11] The mere fact that Helmsman and Howard are not the plaintiff's insurer thus furnishes insufficient grounds to dismiss the outrage claim as to them.[12]

According to Helmsman and Howard, the complaint alleges nothing more than that they delayed payment to the plaintiff for his laptop. (Doc. 6 at 7; Doc. 7 at 14). This, they say, is inadequate as a matter of law to support an outrage claim, and the case they cite appears to support that proposition.[13] The complaint, however, alleges much more than mere delay in payment. As noted, the complaint alleges that Howard attempted to defraud the plaintiff, engaged in subterfuge and did everything in her power to mislead him. (Doc. 1-1 at 16, 20-21). The

---

[11] The plaintiff's claim in *Wilson* was based on egregious comments made by the medical defendants to the plaintiff regarding her mother's "condition and her impending death, and to the effect that she was wasting resources by being in the hospital instead of dying at home." ___ So. 3d at ___, 2017 WL 6397654 at *1.

[12] As Helmsman and Howard acknowledge, the Alabama Supreme Court has permitted an outrage claim in the worker's compensation insurance context, which is not a first-party situation, but they assert that this line of case law "is not applicable here." (Doc. 6 at 6 n.3; Doc. 7 at 13 n.5). They offer no reason why an outrage claim would be possible in the worker's compensation context but not in other third-party insurance contexts. Because *Little* and *Wilson* make plain that the tort is not confined to the three classic paradigms, the Court need not explore the movants' contention further.

[13] "Delay or refusal to pay on an insurance claim is not sufficient by itself to demonstrate barbaric conduct." *Philippou v. American National Property & Casualty Co.*, 2017 WL 21299900 at *3 (M.D. Ala. 2017).

complaint further alleges that Helmsman is responsible for Howard's conduct. (*Id.* at 15, 20).[14] Because Helmsman and Howard have not addressed these allegations, the Court need not decide whether they would, if proved, fall short of the standard for an outrage claim.

The main argument pursued by Helmsman and Howard is that the complaint's allegations are "vague," with insufficient factual material to satisfy Rule 8(a)(2) as construed by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). (Doc. 6 at 3, 6-7; Doc. 7 at 14). With this assessment, the Court agrees.

To survive dismissal under Rule 12(b)(6), a complaint must first satisfy the pleading requirements of Rule 8(a)(2). *Twombly*, 550 U.S. at 555. "A pleading that states a claim for relief must contain … a short and plain statement of the claim showing that the pleader is entitled to relief …." Fed. R. Civ. P. 8(a)(2). Rule 8 establishes a regime of "notice pleading." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 513-14 (2002). It does not, however, eliminate all pleading requirements.

First, the complaint must address all the elements that must be shown in order to support recovery under one or more causes of action. "At a minimum, notice pleading requires that a complaint contain inferential allegations from which we can identify each of the material elements necessary to sustain a recovery under some viable legal theory." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 960 (11th Cir. 2009) (emphasis and internal quotes omitted).

Pleading elements is necessary, but it is not enough to satisfy Rule 8(a)(2). The rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do" to satisfy that rule. *Twombly*, 550 U.S. at 555. There must in addition be a pleading of facts. Though they need not be detailed, "[f]actual allegations must be enough to raise a right to relief above

---

[14] Howard admits that she "provide[s] claims handling support for Helmsman." (Doc. 7-1 at 2).

12

the speculative level ...." *Id*. That is, the complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Id*. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard … asks for more than a sheer possibility that the defendant has acted unlawfully," and "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (internal quotes omitted). A complaint lacking "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" will not "survive a motion to dismiss." *Id*. But so long as the plausibility standard is met, the complaint "may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotes omitted).

As noted, the complaint alleges generally that Howard "contacted me and attempted to frustrate my pleas for relief," that she "did everything in her power to defeat my receiving any compensation and to mislead me," and that she "did attempt to defraud me and resorted to subterfuge and exacerbating my depression and anxieties[, a]ll in an effort to reduce the amounts paid to me for the harms that she knew to have been done to me." (Doc. 1-1 at 15-16, 20-21). These statements are little more than labels and conclusions, with virtually no factual information regarding either: (1) what Howard said and/or did that the plaintiff considers to have been misleading, fraudulent, a subterfuge or otherwise improper; or (2) the circumstances rendering what Howard said and/or did extreme and outrageous. Without such allegations, the complaint cannot survive scrutiny under *Twombly* and *Iqbal*.

Helmsman and Howard seek dismissal with prejudice, (Doc. 6 at 7; Doc. 7 at 14), but this is impermissible. Before dismissal with prejudice of a defendant for failure to state a claim, a *pro se* plaintiff must be given an opportunity to

amend the complaint if a more carefully drafted version might state a claim.[15] Helmsman and Howard make no argument that this stringent standard for dismissal with prejudice is met.

In summary, Helmsman and Howard are entitled to dismissal of the outrage claim as to them, without prejudice, for failure to satisfy Rule 8(a)(2) and thus Rule 12(b)(6).

**IV. Other Pleading Deficiencies.**

The complaint is problematic in other ways unremarked by Helmsman and Howard. They include (without pretense of exhausting the subject) the following.

"Each allegation [of a complaint] must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). The complaint violates this rule by routinely employing long, rambling paragraphs, some of which include unhelpful and distracting editorializing.[16]

"A party must state its claims ... in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). As noted, the complaint contains many inordinately long paragraphs, and none of them are numbered.

The Eleventh Circuit has condemned the use of "shotgun pleadings" over 60 times. *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015). Shotgun complaints include those "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of

---

[15] *E.g., Goguette v. U.S. Bank National Association*, ___ Fed. Appx. ___, 2017 WL 5192360 at *2 (11th Cir. 2017); *Lee v. Alachua County*, 461 Fed. Appx. 859, 860 (11th Cir. 2012); *Schmitt v. United States Office of Personnel Management*, 403 Fed. Appx. 460, 462 (11th Cir. 2010).

[16] For example, found in the midst of a page-long paragraph is the assertion that "[s]omeone in the Pandœmonium of the defendants canceled out the Escalation Number for the complaint." (Doc. 1-1 at 13). Or, in another page-long paragraph, that a defendant "insists that the business affairs of Comcast and Xfinity be conducted in as ruthless and exploitative a fashion as is possible." (*Id*. at 7).

14

action." *Id*. at 1322. At least five pages of the complaint fall squarely within this category, consisting of musings about removal jurisdiction, Rule 408, "exhaustion of remedies," pleading standards, and other material having no place in a proper pleading. (Doc. 1-1 at 8-12).

Another form of shotgun pleading "is one that commits the sin of not separating into a different count each cause of action or claim for relief." *Weiland*, 792 F.3d at 1323. The complaint does not include any specifically identified "counts," and Helmsman and Howard reasonably understood the complaint to include only a single claim for "the tort of outrage," since those are the first four words appearing in the body of the complaint and since the complaint devotes a full page to (inappropriately) discussing what the plaintiff understands to be the law governing such a claim. (Doc. 1-1 at 6, 11-12). The plaintiff, however, now insists that the complaint also includes causes of action for negligence and fraud, (Doc. 24 at 10), apparently because those words appear, buried, in the rambling heading following the style. (Doc. 1-1 at 6). Helmsman and Howard reply that no such claims are asserted in the complaint, (Doc. 29 at 5 n.6), but that is impossible to say, given the chaotic nature of that pleading.

A shotgun pleading such as the instant complaint is subject to a motion to strike under Rule 12(e). *Weiland*, 721 F.3d at 1322 n.10. No defendant has filed such a motion but, "when a defendant fails to do so, the district court ought to take the initiative to dismiss or strike the shotgun pleading and give the plaintiff an opportunity to replead." *Id*. The Court does so.

As the plaintiff prepares his amended complaint, he would be wise to review the applicable pleading rules and cases construing them. As the Court has said to another *pro se* litigant, in that event:

> He will discover that successful plaintiffs present crisp complaints that: clearly allege in brief numbered paragraphs necessary facts as to what each defendant did (not character attacks on the defendants and not irrelevant ramblings); clearly list each legal claim presented, each under a separate heading called a "Count" (not laundry lists of

> unamplified legal terms and case citations); clearly state under each count which defendants are defendants under that count, clearly identify the factual numbered paragraphs that apply to that count, and clearly explain how the legal right implicated by that count was violated; and clearly articulate the relief requested.

*Muhammad v. Bethel*, 2010 WL 2472171 at *3 (S.D. Ala. 2010); *accord Muhammad v. Bethel-Muhammad*, 2012 WL 206173 at *2 (S.D. Ala. 2012).

The plaintiff should be especially careful in pleading his amended complaint, because he has elected to pursue two causes of action that require unusual detail in order to survive. As noted, the tort of outrage "is a very limited cause of action that is available only in the most egregious circumstances." *Thomas*, 624 So. 2d at 1044. Thus, a failure to plead factual content (not glib conclusions) showing egregious circumstances will likely expose the amended complaint to a motion to dismiss for failure to state a claim. To the extent the plaintiff pursues a fraud claim, he "must state with particularity the circumstances constituting fraud," Fed. R. Civ. P. 9(b), a demanding requirement the parameters of which are fleshed out in many cases.[17]

The plaintiff is further cautioned not to assume he will be afforded limitless opportunities to present a legally acceptable pleading. In this regard as in most others, his *pro se* status offers him no immunity from the rules and consequences attending represented parties. "All persons proceeding pro se shall be bound by, and must comply with, all Local Rules of this Court, as well as the Federal Rules of Civil and Criminal Procedure, unless excused by Court order." General Local Rule 83.5(a). Moreover, "both the Supreme Court and [the Eleventh Circuit] have concluded that a defendant's pro se status in civil litigation generally will not excuse mistakes he makes regarding procedural rules." *Nelson v. Barden*, 145 Fed. Appx. 303, 311 n.10 (11th Cir. 2005). Likewise, "even in the case of pro se litigants ... a court [does not have] license to serve as de facto counsel for a party

---

[17] Prudence would also counsel the plaintiff to address in the amended complaint the jurisdictional allegations that certain defendants find wanting. (Doc. 25 at 1-6; Doc. 26 at 1-6).

16

... or to rewrite an otherwise deficient pleading in order to sustain an action ...." *GJR Investments, Inc. v. County of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998).

## CONCLUSION

For the reasons set forth above, the motion of Howard to dismiss under Rule 12(b)(2) is **denied**; the motions of Helmsman and Howard to dismiss under Rule 12(b)(5) are **denied**; and the motions of Helmsman and Howard to dismiss under Rule 12(b)(6) are **granted**. Pursuant to Rules 12(b)(6) and 12(e), the complaint is **dismissed without prejudice** to the plaintiff's ability to file an amended complaint no later than **March 8, 2018**, failing which the Court will enter without further notice an order dismissing this action with prejudice.

Pursuant to Rule 4(m), and assuming he timely files an amended complaint, the plaintiff is given until **April 5, 2018** to properly serve each defendant in accordance with Rule 4 and to file proof of such service, failing which the Court will enter without further notice an order dismissing without prejudice any defendant as to which no such proof of service has been filed.

Based on the Court's rulings herein, the pending motions to dismiss filed by defendants Brian L. Roberts and Comcast Corporation, (Docs. 25, 26), are **denied as moot**.[18]

DONE and ORDERED this 8th day of February, 2018.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[18] The movants' arguments regarding Rules 12(b)(2) and 12(b)(6) depend upon the allegations of the (now dismissed) complaint, while their Rule 12(b)(5) argument, even if meritorious, cannot result in dismissal given the Court's extension of time under Rule 4(m).