# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| MICHAEL HENRY SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 17-0456-WS-M |
| | ) |
| COMCAST CORPORATION, et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

This matter is before the Court on motions to dismiss filed by defendants Helmsman Management Services, LLC ("Helmsman"), Liberty Mutual Insurance Company ("Liberty"), and Joy Howard (collectively, "the Helmsman defendants"). (Docs. 59, 88). The plaintiff has filed responses, (Docs. 80, 91), and the movants replies, (Docs. 84, 92), and the motions are ripe for resolution. After careful consideration, the Court concludes the motions are due to be granted.

## BACKGROUND

The plaintiff filed his *pro se* complaint, (Doc. 1-1 at 6-25), in state court. Helmsman and co-defendant Comcast Corporation ("Comcast") removed the action on the basis of diversity of citizenship. (Doc. 1). The notice of removal and its accompanying evidentiary materials reflected that complete diversity existed but, because the complaint preemptively argued that removal would be improper because multiple (unidentified) Alabama citizens had been sued, (Doc. 1-1 at 12), the Court ordered the plaintiff to present whatever material he deemed appropriate to support his position. (Doc. 8). After full briefing, the Court confirmed that diversity jurisdiction exists. (Doc. 15). Specifically, the Court ruled that, based on the evidence presented, six of the eight named defendants are

citizens of states other than Alabama and the other two do not exist. The citizenship of the two fictitious defendants was disregarded in compliance with 28 U.S.C. § 1441(b). (Doc. 15 at 3-5).

After full briefing, the Court then ruled on the motions to dismiss filed by Helmsman and Howard. The Court granted the motions due to the plaintiff's failure to satisfy Rule 8(a)(2) as construed by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). (Doc. 34 at 12-14). The Court detailed at length not only the problems with the complaint's pleading as to Helmsman and Howard but also its myriad additional pleading deficiencies. (*Id*. at 12-16). The Court, after providing clear instructions and warnings as to the crafting of an amended complaint, dismissed the complaint under Rules 12(b)(6) and 12(e) with leave to amend. (*Id*. at 16-17).

The plaintiff thereafter filed an amended complaint. (Doc. 40). The Helmsman defendants seek dismissal of all claims against them for failure to state a claim upon which relief can be granted.[1]

**DISCUSSION**

One of the many problems with the original complaint was its failure to identify clearly what cause or causes of action were being asserted. (Doc. 34 at 15). To remedy this defect, the amended complaint sets forth eight counts. (Doc. 40 at 4-7). Despite the Court's direction to do so, (Doc. 34 at 15), the plaintiff provides no headings identifying the cause of action asserted under any count, so the movants (and the Court) must tease out the claim from the text of the count.

---

[1] Howard in the alternative seeks dismissal under Rule 12(b)(2) for lack of personal jurisdiction and/or under Rule 12(b)(5) for insufficiency of service of process. (Doc. 88 at 19-21). Rule 12(b)(2) challenges ordinarily should be resolved prior to Rule 12(b)(6) challenges, but Howard's personal jurisdiction challenge is triggered only if the Court dismisses the fraud claim against her while not dismissing other claims. The Court therefore proceeds to the Rule 12(b)(6) aspect of the movants' motions.

The Court, echoing the movants, concludes that the amended complaint asserts the following causes of action:

- Count I  Intentional infliction of emotional distress[2]
- Count II  Fraudulent removal
- Count III  Fraudulent concealment
- Count IV  Fraud/misrepresentation
- Count V  Willfully negligent hiring, training and supervision
- Count VI  Fraudulent billing
- Count VII  Intentional infliction of emotional distress
- Count VIII  Fraudulent falsification of records

The plaintiff offers no disagreement with this catalog.[3]

The Court instructed the plaintiff that any amended complaint should, in addition to presenting each legal claim as a count, "clearly identify the factual numbered paragraphs that apply to that count, and clearly explain how the legal right implicated by that count was violated." (Doc. 34 at 16). The amended complaint does not do so. While it does break some of its predecessor's mammoth paragraphs into shorter, numbered paragraphs, no count identifies any paragraph of factual allegations that apply to the count. Further, most of the counts fail to explain how the plaintiff's legal right was violated.

The amended complaint could justifiably be stricken as a shotgun pleading on this ground alone. The movants, however, argue that the eight counts fail to

---

[2] This tort has been variously termed "intentional infliction of emotional distress," "outrageous conduct," and "outrage" by the Alabama courts. The Court thus uses the terms interchangeably to denote the same tort.

[3] The caption of the amended complaint limits the claims asserted therein to outrage, negligence/wantonness and fraud. (Doc. 40 at 1). The eight counts fit within these categories.

3

state claims against them even if all the factual allegations found within the amended complaint are considered. (Doc. 59 at 6).[4]

**I. Intentional Infliction of Emotional Distress.**

Count One alleges that the defendants "set out to cause me such anguish, stress so to impair my abilities to seek redress," specifically by "send[ing] two men [the fictitious defendants] to my home to physically intimidate me." (Doc. 40 at 4).

The movants argue that Count I fails to identify any conduct by any of them that could support an outrage claim. (Doc. 59 at 8). The Court agrees. Count I by its terms is limited to the conduct of the two fictitious defendants and of any defendant responsible for sending them. The amended complaint, however, identifies no connection of the Helmsman defendants to this challenged conduct; on the contrary, it negates such a connection.

According to the amended complaint's statement of facts, the seeds of this lawsuit were sown when a "Comcast"[5] technician connected the wrong size cable to the Ethernet port on the plaintiff's laptop at his home, permanently disabling the port. The plaintiff contacted "Comcast" for tech support, was assigned an escalation number, and received a visit from a second technician, who confirmed the damage. Unknown to the plaintiff, his escalation number was then canceled out. Eventually, the plaintiff contacted tech support again, resulting in a third technician visiting his home and again confirming the damage. The plaintiff then called tech support again and was told an area supervisor would come out and make it right. The two fictitious defendants (both of them area supervisors) arrived and engaged in the conduct on which Count I is based. (Doc. 40 at 12-14).

---

[4] Because Howard's brief is an essentially verbatim repetition of her fellow movants' brief, the Court cites only the latter.

[5] It is not clear whether the amended complaint uses this term to describe a particular defendant or entity or simply as a generic description.

The amended complaint divides the defendants into two groups: the "Comcast defendants" and the "Helmsman defendants." (Doc. 40 at 2-3). The fictitious defendants are among the former group, while all three movants are in the latter group. (*Id*.). The amended complaint alleges that it was the "Comcast defendants," not the Helmsman defendants, that dispatched the area supervisors to the plaintiff's home. (*Id*. at 23; *accord id*. at 18-20).

Count I's only reference to the Helmsman defendants is the allegation that they are "surrogates" for the Comcast defendants. (Doc. 40 at 4). A surrogate is "one appointed to act in the place of another" or "one that serves as a substitute." Merriam Webster's Collegiate Dictionary 1187 (10th ed. 1994). While Count I thus may allege that the Helmsman defendants act for the Comcast defendants, it does not allege that the Comcast defendants act for the Helmsman defendants so as to even possibly implicate any concept of indirect liability.[6]

In any event, as explained in the Court's order granting Comcast's motion to dismiss, (Doc. ___ at ___), the amended complaint fails to state a claim of outrage based on the fictitious defendants' conduct.

For the reasons set forth above, the Helmsman defendants' motion to dismiss Count I against them is due to be granted.

**II. Fraudulent Removal.**

Count Two alleges that all defendants agreed to hide the identities of the fictitious defendants from the plaintiff so as to remove this action to federal court, all as part of their plan to deny the plaintiff just compensation. (Doc. 40 at 4). The plaintiff considers this a "fraud upon the Court." (*Id*. at 18, 19, 21, 22).

---

[6] The plaintiff, though proceeding *pro se*, is unusually literate, his pleadings sprinkled with apt usages of such uncommon terms as "Pandœmonium" (with attribution to Milton) and "vestigial." (Doc. 1-1 at 3; Doc. 40 at 13 n.10). It cannot be assumed that he understands "surrogate" in any sense other than its commonly accepted one.

5

The plaintiff explains that the removal of this action constituted a fraud on the Court because "the defendants were required to swear that the question of diversity was complete: that they knew of no persons named in the complaint that were residents sufficient to defeat the question of diversity." (Doc. 80 at 2).[7] The plaintiff believes he has identified one of the fictitious defendants as an Alabama resident, and he further believes the defendants knew at the time of removal both who this fictitious defendant is and that he shares the plaintiff's Alabama citizenship. (*Id.*).[8]

Fraud on the court is a vehicle for setting aside an order or judgment procured by such fraud. *E.g, S.E.C. v. ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir. 1988). The plaintiff, however, does not seek such relief. Instead, the only relief demanded in the amended complaint is an award of $5 million from each defendant. (Doc. 40 at 26-27). Though it seems doubtful the concept can be used to obtain a money judgment,[9] the Helmsman defendants raise no such argument, so the Court proceeds.

Fraud on the court is a rare creature. "[O]nly the most egregious

---

[7] Because the plaintiff's response to Howard's motion is substantively indistinguishable from his response to the other movants' motion, the Court cites only the latter.

[8] Count II is the only count that the plaintiff addresses in his briefs. Contrary to the movants' understanding, this silence does not work an "abandonment" of all other claims. (Doc. 84 at 2). As the Court has held after extensive analysis, "until the Eleventh Circuit (or Supreme Court) speaks more clearly to the issue or a sister Court (or litigant) provides a more compelling rationale, the Court will not treat a claim as abandoned merely because the plaintiff has not defended it in opposition to a motion to dismiss." *Gailes v. Marengo County Sheriff's Department*, 916 F. Supp. 2d 1238, 1243 (S.D. Ala. 2013). On the other hand, if "the defendant's presentation is adequate to satisfy its initial burden, the Court will not deny the motion based on arguments the plaintiff could have made but by silence elected not to raise." *Id.* at 1244.

[9] *See, e.g., In re: Farmland Industries, Inc.*, 639 F.3d 402, 405 (8th Cir. 2011) ("Further, the remedy GAF seeks – money damages – is at odds with a fraud on the court claim, for which the remedy is the setting aside of the fraudulently obtained court judgment.").

misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated, will constitute a fraud on the court." *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1338 (5th Cir. 1978) (internal quotes omitted); *accord Gottlieb v. Securities and Exchange Commission*, 724 Fed. Appx. 925, 926 (11th Cir. 2018). "Alternatively stated, … it is necessary to show an unconscionable plan or scheme which is designed to improperly influence the court in its decision." *Rozier*, 573 F.2d at 1338 (internal quotes omitted); *accord Gupta v. U.S. Attorney General*, 556 Fed. Appx. 838, 841 (11th Cir. 2014). Nothing of the sort is even remotely implicated here.

Because the plaintiff repeatedly harps on this issue, the Court has previously explained the bankruptcy of his position. (Doc. 15 at 3, 5; Doc. 48 at 1). Congress has unequivocally decreed that, " [i]n determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title [diversity of citizenship], the citizenship of defendants sued under fictitious names *shall be disregarded*." 28 U.S.C. § 1441(b)(1) (emphasis added). The citizenship of the two area supervisors was thus, by law, utterly irrelevant to the existence *vel non* of complete diversity at the time the case was removed. The statement in the notice of removal that "there is complete diversity amongst the parties," (Doc. 1 at 5), thus was legally correct, regardless of whether the area supervisors are in fact Alabama citizens.[10] Contrary to the plaintiff's perception, the Court is not "displease[d]" with his continued insistence on his meritless position, (Doc. 40 at 4), but it does not improve with repetition. The defendants properly removed this action and did not by their legally impeccable presentation "improperly influence" the Court's correct determination that it has subject matter jurisdiction; not the slightest, most attenuated fraud attended the removal.

---

[10] Although unnecessary to the resolution of the instant motion, the defendants did not in fact represent that they knew the fictitious defendants were not Alabama citizens. On the contrary, they stated only that "there is no allegation regarding their purported Citizenship …." (Doc. 1 at 6).

7

For the reasons set forth above, the Helmsman defendants' motion to dismiss Count II as to them is due to be granted.

**III. Fraudulent Concealment.**

Count III is a variation on Count II. While Count II asserts fraud in the removal itself, Count III alleges that, post-removal, the defendants have proactively concealed the identities of the fictitious defendants, including by cautioning present and former employees not to reveal who the fictitious defendants are. (Doc. 40 at 5). The plaintiff believes this conduct has stymied his efforts to identify the fictitious defendants (whom he believes to be Alabama citizens) by name, so that he may move to amend the complaint to name them – an approach that, if successful, presumably would require remand pursuant to 28 U.S.C. § 1447(e). (Doc. 10 at 3).

Count III is thus a continuation of the plaintiff's fraud-on-the-court theme. Whatever frustration the plaintiff may feel in his efforts to identify the fictitious defendants, however, "[w]e have consistently held that a fraud between the parties is not a fraud on the court." *Patterson v. Lew*, 265 Fed. Appx. 767, 769 (11th Cir. 2008). More specifically, "the mere nondisclosure to an adverse party and to the court of facts pertinent to a controversy before the court does not add up to fraud upon the court." *Kerwit Medical Products, Inc. v. N. & H. Instruments, Inc.*, 616 F.2d 833, 837 (5th Cir. 1980). While the result might (or might not) be different "had the discovery process continued and had [the movants] culpably withheld material facts," *id.*, that did not happen here.[11]

---

[11] The Magistrate Judge stayed all discovery and Rule 26 obligations pending resolution of the defendants' motions to dismiss. (Doc. 17). After the Court ruled on those motions, (Doc. 34), the plaintiff filed a motion to compel the defendants to produce the names and addresses of the fictitious defendants. (Doc. 36). The Court denied that motion because none of the events triggering the commencement of discovery under Rule 26(d)(1) had occurred. (Doc. 37). Nor to this date have they occurred. The defendants thus have never been under any obligation to furnish the plaintiff with information regarding the fictitious defendants.

For the reasons set forth above, the Helmsman defendants' motion to dismiss Count III as to them is due to be granted.

## IV. Fraud/Misrepresentation.

Count IV alleges that Howard "delayed me by putting up false hurdles to clear before going on to the next hurdle. She was moving the goal posts." By doing so, she "attempt[ed] to defraud" the plaintiff and break him so he would not pursue to the finish his quest for just compensation. (Doc. 40 at 5).

Elsewhere, the amended complaint alleges that, sometime after the fictitious defendants visited his home and the plaintiff sent a demand letter to a vice-president of defendant Comcast, Howard first contacted the plaintiff "and attempted to frustrate my pleas for relief." After the plaintiff sent a second demand letter to Comcast, Howard dispatched an insurance investigator to look at his laptop and confirm the damage and its cause. For six months, Howard "did everything in her power to defeat my receiving any compensation and to mislead me." (Doc. 40 at 15). Howard "did delay me, force me to repeat my requests for relief and equity and she did lie to me about the law and the liability of the defendants. She did know of my circumstances and played against them to drive up my anxieties so that I would relent." (*Id*. at 22).

The movants argue that the plaintiff has failed to plead fraud with particularity and has otherwise failed to state a claim on which relief can be granted. (Doc. 59 at 12-14). The Court agrees.

"In alleging fraud …, a party must state with particularity the circumstances constituting fraud …." Fed. R. Civ. P. 9(b). In order to satisfy Rule 9(b), the plaintiffs must allege: "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud."

9

*American Dental Association v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010) (internal quotes omitted). All the amended complaint alleges about misrepresentations, however, is that Howard "put up false hurdles to clear," "did everything in her power … to mislead me," and "did lie to me about the law and the liability of the defendants." This is woefully inadequate to satisfy Rule 9(b). Not a single alleged misrepresentation is identified,[12] much less the time or place it was made, much less how the plaintiff was misled. A more complete failure to satisfy Rule 9(b) would be difficult to imagine.

To survive a motion to dismiss under Rule 12(b)(6), "[a]t a minimum, notice pleading requires that a complaint contain inferential allegations from which we can identify each of the material elements necessary to sustain a recovery under some viable legal theory." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 960 (11th Cir. 2009) (emphasis and internal quotes omitted). The elements of fraud that must be pleaded and proved include: (1) a false representation; (2) of a material existing fact; (3) that is relied on by the plaintiff; (4) who was damaged as a proximate result of the misrepresentation." *Deng v. Scroggins*, 169 So. 3d 1015, 1024 (Ala. 2014). If the representation is not of an existing fact but is a promise about the future, the plaintiff must plead and prove that the defendant, at the time of the representation (1) did not intend to fulfill the promise and (2) intended to deceive the plaintiff. *Id*. The amended complaint fails to allege that any misrepresentation was material or that the plaintiff relied on it. Count IV would thus be subject to dismissal even without reference to Rule 9(b)'s more stringent pleading requirements.

For the reasons set forth above, the Helmsman defendants' motion to dismiss Count IV as to them is due to be granted.

---

[12] The only statement identified in the amended complaint is Howard's comment that, "It isn't whether or not we owe it to you, it's whether or not you can make us pay you." (Doc. 40 at 5). This is a statement, but it is not a representation that the plaintiff alleges was false; on the contrary, the plaintiff proffers the statement as a true representation of the Helmsman defendants' position.

## V. Willful/Negligent Hiring, Training and Supervision.

Count V alleges that the defendants were "willfully negligent" in their hiring practices and in not supervising and training employees. (Doc. 40 at 5-6). The balance of the amended complaint adds nothing to this skeletal allegation. The movants argue that the amended complaint fails to state a claim on which relief can be granted. (Doc. 59 at 14-16). The Court agrees.

As this Court has recognized, among the elements of a negligent employment tort is that "the employee committed a tort recognized under Alabama law." *James v. Nationstar Mortgage, LLC*, 92 F. Supp. 3d 1190, 1200 (S.D. Ala. 2015). Therefore, the dismissal of all tort claims against the employee requires the dismissal of all negligent employment claims against the employer. *Polion v. City of Greensboro*, 26 F. Supp. 3d 1197, 1227 (S.D. Ala. 2014). The only employee of any of the Helmsman defendants mentioned in the amended complaint is Howard. As discussed in Parts II, III, IV and VII, the plaintiff has failed to state a claim against Howard. Therefore, as the movants argue, (Doc. 59 at 14-15), the plaintiff cannot establish a claim under Count V.

For the reasons set forth above, the Helmsman defendants' motion to dismiss Count V as to them is due to be granted.

## VI. Fraudulent Billing.

Count VI is expressly limited to the Comcast defendants. (Doc. 40 at 6).

## VII. Intentional Infliction of Emotional Distress.

Count VII alleges that all of the defendants utilized their special skills, practices and customs to intentionally inflict emotional distress on the plaintiff. (Doc. 40 at 6). The movants argue that the amended complaint fails adequately to allege all elements of such a claim as to them. (Doc. 59 at 8-10). The Court agrees.

Unlike Count I, Count VII is not limited in scope to a particular incident (the visit from the fictitious defendants). Instead, Count VII appears to rely on all of the amended complaint's allegations regarding the conduct of the various defendants. Much of this conduct was that of the Comcast defendants, not the Helmsman defendants, and the amended complaint does not allege that the latter are responsible for the conduct of the former.

The relevant allegations, then, are those discussed in Parts II-IV: that the movants, directly and/or through Howard: (1) removed this action based on false representations regarding the citizenship of the fictitious defendants; (2) concealed from the plaintiff the identity and citizenship of the fictitious defendants; (3) wrongfully delayed the plaintiff's efforts to obtain compensation for his laptop; and (4) lied to him about the law and the defendants' liability.[13]

Among the elements of an outrage claim is that the challenged conduct "was extreme and outrageous." *Ex parte Crawford & Co.*, 693 So. 2d 458, 460 (Ala. 1997). "By extreme we refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Horne v. TGM Associates, L.P.*, 56 So. 3d 615, 630 (Ala. 2010) (internal quotes omitted). "This Court has consistently held that the tort of outrage is a very limited cause of action that is available only in the most egregious circumstances." *Thomas v. BSE Industrial Contractors, Inc.*, 624 So. 2d 1041, 1044 (Ala. 1993). "The tort of outrage … is so limited that this Court has recognized it in regard to only three kinds of conduct: (1) wrongful conduct in the family-burial context [citation omitted]; (2) barbaric methods employed to coerce an insurance settlement [citation omitted]; and (3) egregious sexual harassment [citation omitted]." *O'Rear v. B.H.*, 69 So. 3d 106, 118 (Ala. 2011) (internal quotes omitted).

---

[13] In addition, the amended complaint alleges that Howard told the plaintiff several times, "It isn't whether or not we owe it to you, it's whether or not you can make us pay you." (Doc. 40 at 5). However, the amended complaint also concedes that this is not actually what Howard said but is a paraphrase. (*Id.*).

However, this "is not to say ... that the tort of outrage is viable in only the three circumstances noted" above. *Little v. Robinson*, 72 So. 3d 1168, 1172-73 (Ala. 2011) (noting that liability was upheld in *O'Rear* even though the facts fell within none of the three categories). Therefore, a statement "that the tort of outrage is limited to three situations is an incorrect statement of the law." *Wilson v. University of Alabama Health Services Foundation, P.C.*, ___ So. 3d ___, 2017 WL 6397654 at *3 (Ala. 2017).

The expansion of the tort beyond its traditional three categories is modest at best. The Alabama Supreme Court in *Little* identified only a single time it has permitted an outrage claim outside the three historic fact patterns: a case in which the defendant doctor was asked to counsel a teenager over his parents' divorce and instead "began exchanging addictive prescription drugs for homosexual sex for a number of years, resulting in the boy's drug addiction." 72 So. 3d at 1173 (describing *O'Rear*). The situation in *Wilson* involved egregious comments made by the medical defendants to the plaintiff regarding her mother's "condition and her impending death, and to the effect that she was wasting resources by being in the hospital instead of dying at home," and even then the Court did not rule that an outrage claim could be based on such allegations but instead remanded to the trial court for its consideration of the possibility. 2017 WL 6397654 at *1, *3.

Whatever the fact pattern, the tort remains "viable only when the conduct is so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Little*, 72 So. 3d at 1173 (internal quotes omitted). Whether a fact pattern attains this rarefied level is a question of law for determination by the court. *Wilson*, 2017 WL 6397654 at *3; *accord id*. at *4 (Murdock, J., dissenting); *McGinnis v. American Home Mortgage Servicing, Inc*., 817 F.3d 1241, 1258 (11th Cir. 2016) (Georgia law); *Lincoln v. Florida Gas Transmission Co. LLC*, 608 Fed. Appx. 721, 722 (11th Cir. 2015) (Florida law).

The conduct alleged in Counts II and III does not fall within any of the three traditional categories. Nor was it otherwise outrageous in character and extreme in degree. As discussed in Part II, the removal of this action was not merely non-fraudulent, it was entirely proper. As discussed in Part III, any refusal to volunteer information regarding the fictitious defendants was neither fraudulent nor otherwise wrongful. The conduct made the basis of Counts II and III thus offers no support for the outrage claim asserted in Count VII.

That leaves for consideration Howard's alleged conduct in addressing the plaintiff's efforts to obtain compensation for his damaged laptop. This conduct likewise falls outside the traditional three categories of the tort of outrage and does not otherwise attain the threshold for such a claim. Lying, though no cause for commendation, is not of itself extreme and outrageous conduct.[14] Likewise, mere delay is not of itself extreme and outrageous conduct.[15] While either or both presumably could, depending on the circumstances revealed by the pleading, contribute to the assertion of a viable outrage claim, the amended complaint provides inadequate information to work such a transformation. Howard's lying is described only vaguely as being "about the law and liability of the defendants," (Doc. 40 at 22), which as stated reflects nothing more than a disagreement about legal responsibility for the damage to the Ethernet port. Howard's delay is limited to forcing the plaintiff to "repeat [his] requests for relief," (*id*.), which is far too ordinary an occurrence to suggest outrage; simply labeling it as a "false hurdle,"

---

[14] *See Carter v. Countrywide Home Loans, Inc.*, 2010 WL 4269149 at *8 (M.D. Ala. 2010) (citing cases); *see also Callens v. Jefferson County Nursing Home*, 769 So. 2d 273, 276, 281 (Ala. 2000) (fracturing an elderly patient's hip and then lying to her daughter about it would not support an outrage claim); *Redmon v. Auto*, 2014 WL 4855023 at *10 (M.D. Ala. 2014) (false allegations of sexual harassment would not support an outrage claim).

[15] *See Ex parte Crawford*, 693 So. 2d at 461 (insurer's delay in making payments, along with giving the patient the runaround and an unsympathetic attitude, are not enough for a successful outrage claim; "[a]lthough constant delay may be inconvenient and upsetting at times," it does not support an outrage claim).

(*id*. at 5), with no explanation of what rendered it false, does not recast the delay as outrageous.

The amended complaint alleges that the plaintiff is a 62-year-old man and the sole caregiver for his mentally and physically handicapped sister. (Doc. 40 at 2). It further alleges that Howard was aware of these circumstances and played them against the plaintiff in order to pressure him to relent in his efforts to obtain compensation for his laptop. (*Id*. at 22). The amended complaint further alleges that Howard said something to the effect that the question was not whether the defendants owed compensation but whether the plaintiff could make them pay. (*Id*. at 5). These allegations would tend to lend support to an outrage claim but, without adequately detailed allegations about Howard's actual conduct showing that conduct to be outrageous in character and extreme in degree – which the amended complaint lacks – they cannot by themselves rescue her claim.

The Alabama courts have repeatedly rejected outrage claims based on behavior at least as objectionable as that alleged here.[16] "[T]he tort of outrage does not recognize recovery for mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Little*, 72 So. 3d at 1172 (internal quotes omitted). The plaintiff clearly does not view his alleged experience with the Helmsman defendants as trivial, but it falls far short of the truly extreme and outrageous conduct that alone can support such a claim.

For the reasons set forth above, the Helmsman defendants' motion to dismiss Count VII as to them is due to be granted.

---

[16] *See, e.g.*, *Callens*, 769 So. 2d at 276, 281 (nursing home forcibly restrained an elderly patient to the point of fracturing her hip, then falsely told the patient's guardian that the patient had injured herself); *Ex parte Crawford*, 693 So. 2d at 461 (insurer's constant delay in payment of medical bills, done for the purpose of persuading the plaintiff to settle for less).

## VIII. Fraudulent Falsification of Records.

Count VIII is expressly limited to the Comcast Defendants. (Doc. 40 at 7).

## IX. Leave to Amend.

The Helmsman defendants move that the claims against them be dismissed with prejudice. (Doc. 59 at 19). The Court agrees that such a dismissal is warranted.

The Court on motion previously dismissed the complaint for failure to satisfy Rule 8(a)(2), *Twombly* and *Iqbal*. The Court pointed out that the plaintiff's allegations were "little more than labels and conclusions, with virtually no factual information." (Doc. 34 at 13). The Court expressly informed the plaintiff that, in order to survive a second motion to dismiss, he would need to plead factual information regarding what was said and/or done that he considers to be fraudulent or otherwise improper and regarding the circumstances rendering the defendants' conduct extreme and outrageous. (*Id*.). The Court reminded the plaintiff that, because the tort of outrage reaches only the most egregious of circumstances, he must plead factual content (not glib conclusions) showing such circumstances. (*Id*. at 16). The Court further cautioned the plaintiff that any fraud claim must be pleaded with particularity. (*Id*.). Finally, the Court warned the plaintiff that he would not be afforded limitless opportunities to present a legally acceptable pleading and that the Court would not rescue him from his failure to meet his pleading obligations. (*Id*. at 16-17).

The amended complaint adds most of the allegations addressed in Parts IV and VII. As discussed in Part IV, those allegations fail to plead fraud with anything resembling particularity. As discussed in Part VII, those allegations fall far short of the minimum standard for a claim of outrage. That the plaintiff, even after being schooled as to what he must plead in order to survive dismissal, failed to do so indicates he is unable to plead what the law requires him to plead. Nor does the plaintiff request additional opportunity to plead a viable claim.

For the reasons set forth above, the dismissal of the plaintiff's claims against the movants will be with prejudice and without leave to amend.

## CONCLUSION

For the reasons set forth above, the Helmsman defendants' motion to dismiss is **granted**. All claims against defendants Helmsman Management Services, LLC, Liberty Mutual Insurance Company and Joy Howard are **dismissed with prejudice**.

DONE and ORDERED this 17th day of July, 2018.

s/ WILLIAM H. STEELE<br>
UNITED STATES DISTRICT JUDGE