# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| MICHAEL HENRY SMITH, | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION 17-0456-WS-M |
| COMCAST CORPORATION, et al., | ) |
| Defendants. | ) |

## ORDER

This matter is before the Court on the motion of defendant Comcast Corporation ("Comcast") to dismiss. (Doc. 61). The plaintiff declined the opportunity to respond, (Doc. 63), and the motion is ripe for resolution.[1] After careful consideration, the Court concludes the motion is due to be granted.

## BACKGROUND

The background of this case is provided in previous orders. (Docs. 15, 34, 93).

## DISCUSSION

Comcast raises both a Rule 12(b)(2) argument that the Court lacks personal jurisdiction over it and a Rule 12(b)(6) argument that the amended complaint, (Doc. 40), fails to state a claim on which relief can be granted.

**I. Personal Jurisdiction.**

A defendant may move to dismiss based on "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2). "As a general rule, courts should address issues relating to personal

---

[1] The plaintiff's failure to respond does not work an abandonment of his claims or relieve Comcast of its burden to demonstrate that dismissal is legally warranted. *Gailes v. Marengo County Sheriff's Department*, 916 F. Supp. 2d 1238, 1243-44 (S.D. Ala. 2013).

jurisdiction before reaching the merits of a plaintiff's claims." *Republic of Panama v. BCCI Holdings S.A.*, 119 F.3d 935, 940 (11th Cir. 1997). The Court, like Comcast, thus addresses personal jurisdiction first.

"A plaintiff seeking to establish personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (internal quotes omitted). "When a defendant challenges personal jurisdiction by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction," unless "the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Id*. (internal quotes omitted). "Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." *Meier ex rel. Meier v. Sun International Hotels, Ltd*., 288 F.3d 1264, 1269 (11th Cir. 2002); *accord Diamond Crystal Brands, Inc. v. Food Movers International, Inc*., 593 F.3d 1249, 1257 (11th Cir. 2010).

An evidentiary hearing on a motion to dismiss for lack of personal jurisdiction is discretionary, not mandatory. *E.g., Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1317 (11th Cir. 2008). Because the parties have not requested an evidentiary hearing, the Court exercises its discretion not to conduct one. Absent such a hearing, the plaintiff's burden is to present enough evidence, construed most favorably to him, to withstand a motion for directed verdict. *Id*.

"A federal court sitting in diversity may exercise jurisdiction over a nonresident defendant to the same extent as a court of that state." *Ruiz de Molina v. Merritt & Furman Insurance Agency, Inc*., 207 F.3d 1351, 1355 (11th Cir. 2000). Alabama "extends the personal jurisdiction of Alabama courts to the limits of due process under the federal and state constitutions." *Ex parte Fidelity Bank*, 893 So. 2d 1116, 1121 (Ala. 2004); *accord* Ala. R. Civ. P. 4.2(b). Due process under the Alabama Constitution is in this respect co-extensive with that under the federal Constitution. *Ex parte Georgia Farm Bureau Mutual Automobile Insurance Co*., 889 So. 2d 545, 550 (Ala. 2004).

A forum state's personal jurisdiction over a defendant may be either general or specific. "General personal jurisdiction arises when a defendant maintains continuous and systematic contacts with the forum state even when the cause of action has no relation to those contacts." *HomeBingo Network, Inc. v. Chayevsky*, 428 F. Supp. 2d 1232, 1241 (S.D. Ala. 2006) (internal quotes omitted). "Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum." *PVC Windoors, Inc. v. Babbitbay Beach Construction, N.V.*, 598 F.3d 802, 808 (11th Cir. 2010) (internal quotes omitted).

"[O]nly a limited set of affiliations with a forum will render a defendant amenable to general jurisdiction in that State." *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017) (internal quotes omitted). "A court may assert general jurisdiction over foreign [entities] when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotes omitted). The "at home" limitation means the defendant's contacts with the forum must be such that it is "comparable to a domestic enterprise in that State." *Daimler AG v. Bauman*, 571 U.S. 117, 133 n.11 (2014) (internal quotes omitted).

As to specific jurisdiction, "a State may authorize its courts to exercise personal jurisdiction over an out-of-state defendant if the defendant has certain minimum contacts with the State such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Goodyear Dunlop*, 564 U.S. at 923. That is, "[a] defendant is constitutionally amenable to a forum's specific jurisdiction if it possesses sufficient minimum contacts with the forum to satisfy due process requirements, and if the forum's exercise of jurisdiction comports with traditional notions of fair play and substantial justice." *Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534, 1545 (11th Cir. 1993) (internal quotes omitted).

"To constitute constitutionally minimum contacts, the defendant's contacts with the applicable forum must satisfy three criteria. First, the contacts must be related to the plaintiff's cause of action or have given rise to it." *Vermeulen*, 985 F.2d at 1546.

"Second, the contacts must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum ..., thus invoking the benefits and protections of its laws." *Id*. (internal quotes omitted). "Third, the defendant's contacts with the forum must be such that [the defendant] should reasonably anticipate being haled into court there." *Id*. (internal quotes omitted).

Comcast first argues that the amended complaint fails to set forth enough facts to make out a *prima facie* showing of personal jurisdiction and that this failure requires dismissal without further inquiry. (Doc. 61 at 2-7). Comcast frequently repeats its position, but it does not address the allegations of the amended complaint, much less compare those allegations with the pleading requirements applicable to personal jurisdiction, and the Court will not perform this labor on Comcast's behalf. To the uncertain extent Comcast suggests that the only permissible way to plead personal jurisdiction is through a section of the complaint expressly dedicated to that purpose, it identifies no authority supporting its position.

The Court therefore proceeds to a consideration of Comcast's evidence. With respect to general jurisdiction, Comcast relies on previously submitted evidence that it is a Pennsylvania corporation with its principal place of business in that state. (Doc. 1-2 at 2). Comcast relies on the declaration of its vice president and senior deputy general counsel, who asserts on personal knowledge that Comcast "is a holding company that does not itself market, sell, or provide cable or internet services, products, or equipment to anyone, including [the plaintiff.]" (Doc. 61-1 at 2). Because this testimony provides more than "conclusory assertions that [Comcast] is not subject to jurisdiction," it must be considered, but only to the extent it "supports [Comcast's] position" that personal jurisdiction is lacking. *Mosseri*, 736 F.3d at 1350. To the extent the declaration does support Comcast's position, it will control, since the plaintiff did not "produce evidence supporting jurisdiction." *Id*.

With respect to general jurisdiction, "[a] corporation's operations in a forum other than its formal place of incorporation or principal place of business will be so substantial and of such a nature as to render the corporation at home in that State only in

'exceptional' cases." *Carmouche v. Tamborlee Management, Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015) (quoting *Bauman*, 571 U.S. at 139 n.19). Whether or not the submitted declaration rules out such exceptional circumstances, neither it nor the amended complaint contains anything that could even possibly be construed as suggesting their existence. The Court thus concludes that, for purposes of this lawsuit, Comcast is not subject to general jurisdiction in Alabama.

With respect to specific jurisdiction, the declaration is evidence that Comcast did not market, sell or provide the plaintiff with any cable or internet services, products or equipment. To the extent personal jurisdiction is based on allegations that Comcast did such things in Alabama, the declaration presumably carries Comcast's burden.[2] The amended complaint, however, is not based on such allegations.

As discussed in the Court's order granting the Helmsman defendants' motions to dismiss ("the Helmsman order"), (Doc. 93), Counts II and III are based on the defendants' conduct in this litigation – specifically, that they improperly removed this action from state court and then concealed the identities of the fictitious defendants to prevent the plaintiff from naming them.[3] Count I is based on the conduct of Comcast and other defendants in sending the fictitious defendants to the plaintiff's home to physically intimidate him into dropping his demand for compensation for his damaged laptop.[4] Count V is based on the defendants' negligent hiring, training and supervision, resulting in overzealous measures to dissuade customers from making complaints. Counts VI and VIII are based on the conduct of "the Comcast defendants" (defined as including Comcast) in fraudulently billing the plaintiff and in falsifying their internal records to

---

[2] Evidence that a defendant did not engage in the conduct on which suit is based always goes to the merits but may also go to whether the defendant had minimum contacts with the forum. The Court assumes without deciding that a defendant, on a motion to dismiss for lack of personal jurisdiction, may rely on such evidence even though it touches on the merits of the lawsuit.

[3] Comcast is specifically identified as having engaged in this conduct. (Doc. 40 at 18).

[4] Comcast is specifically identified as having dispatched the fictitious defendants. (*Id.*).

erase his attempts to obtain compensation. (*Id*. at 6, 7).[5] Count VII is based on the conduct addressed in the other counts (including Count IV, which alleges fraud directed at the plaintiff by co-defendant Howard when he tried to obtain compensation). These claims are not based on the sale or provision of cable or internet services or products to the plaintiff but on the defendants' conduct *after* the plaintiff's laptop was damaged during installation of service. (Doc. 40 at 12).[6] The submitted declaration thus fails to bring the jurisdictional allegations of the amended complaint into question.

For the reasons set forth above, Comcast's motion to dismiss for lack of personal jurisdiction is due to be denied.

## II. Failure to State a Claim.

As set forth in the Helmsman order, (Doc. 93 at 3), the amended complaint asserts the following causes of action:

- Count I        Intentional infliction of emotional distress
- Count II       Fraudulent removal
- Count III      Fraudulent concealment
- Count IV       Fraud/misrepresentation
- Count V        Willfully negligent hiring, training and supervision
- Count VI       Fraudulent billing
- Count VII      Intentional infliction of emotional distress
- Count VIII     Fraudulent falsification of records

Comcast assumes it is a defendant under all eight counts. (Doc. 61 at 10). It argues as a universal matter that, because it is a holding company, it "is incapable of

---

[5] Comcast is specifically identified as having engaged in this conduct. (*Id*.).

[6] Only Count V is not captured by this temporal reasoning, but even it is not based on the sale or provision of cable or internet services or products to the plaintiff.

engaging in any activity or conduct." (*Id*. at 10). That would appear to be *non sequitur*,[7] but in any event it depends on evidence outside the complaint, which is not permissible under Rule 12(b)(6).

### A. Intentional Infliction of Emotional Distress.

Count I alleges that the defendants "set out to cause me such anguish, stress so to impair my abilities to seek redress," specifically by "send[ing] two men [the fictitious defendants] to my home to physically intimidate me." (Doc. 40 at 4). The amended complaint describes the conduct of the fictitious defendants and the background of their visit as follows.

The plaintiff is a 62-year-old who is sole caregiver for his mentally and physically handicapped sister. (Doc. 40 at 2). A pair of "Comcast"[8] technicians permanently disabled the Ethernet port on the plaintiff's laptop while installing internet and phone service. The plaintiff called tech support, which sent another technician, who confirmed the port was unserviceable. The plaintiff then received an absurdly high bill, which required hours of back and forth to have reduced, though still not to the contract amount. The escalation number for the plaintiff's complaint was canceled out, leading the plaintiff to spend additional hours with tech support before a third technician arrived and again confirmed the Ethernet port was ruined. This prompted the plaintiff to call tech support again, which told him that an area supervisor would come out and make it right. The plaintiff then received a second exorbitant bill. (*Id*. at 12-13).

The two fictitious defendants (both area supervisors) arrived and beat "roughly and loudly" on the front door. When the plaintiff opened the door, they moved towards him "with threatening postures" and "demanded" that he "step outside." When he did so,

---

[7] Even if limitations on the powers of a holding company were to preclude it from *properly* engaging in activity like that alleged herein, it could not negate the holding company's *actual* engagement in such activity in violation of those limitations.

[8] It is not clear whether the amended complaint uses this term to describe a particular defendant or entity or simply as a generic description.

7

they "flanked" him, assumed "fighting postures," which was "as if [they] were on the verge of punching or kicking" the plaintiff. They spoke to him "coarse[ly]," in a "loud and salty fashion," accusing him of fraud. They then "demanded entry" to the house in order to see the wiring and laptop, where they were "rude and pushy," "rough and demanding," and where they acted in an "intimidating fashion" or "menacing manner," constantly moving from one side of the plaintiff to the other so he could not see both of them at once. The plaintiff was terrified the two would start a physical confrontation and that his sister – who was sitting in the den a few feet away and whom the fictitious defendants "took time to observe" – would be harmed. The defendants dispatched the two fictitious defendants to the plaintiff's home in order to intimidate him into relinquishing his claims. (Doc. 40 at 14, 25-26).

Among the elements of an outrage claim is that the challenged conduct "was extreme and outrageous." *Ex parte Crawford & Co.*, 693 So. 2d 458, 460 (Ala. 1997). "By extreme we refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Horne v. TGM Associates, L.P.*, 56 So. 3d 615, 630 (Ala. 2010) (internal quotes omitted). "This Court has consistently held that the tort of outrage is a very limited cause of action that is available only in the most egregious circumstances." *Thomas v. BSE Industrial Contractors, Inc.*, 624 So. 2d 1041, 1044 (Ala. 1993). "The tort of outrage … is so limited that this Court has recognized it in regard to only three kinds of conduct: (1) wrongful conduct in the family-burial context [citation omitted]; (2) barbaric methods employed to coerce an insurance settlement [citation omitted]; and (3) egregious sexual harassment [citation omitted]." *O'Rear v. B.H.*, 69 So. 3d 106, 118 (Ala. 2011) (internal quotes omitted). However, this "is not to say ... that the tort of outrage is viable in only the three circumstances noted" above. *Little v. Robinson*, 72 So. 3d 1168, 1172-73 (Ala. 2011) (noting that liability was upheld in *O'Rear* even though the facts fell within none of the three categories). Therefore, a statement "that the tort of outrage is limited to three situations is an incorrect statement of

the law." *Wilson v. University of Alabama Health Services Foundation, P.C.*, ___ So. 3d ___, 2017 WL 6397654 at *3 (Ala. 2017).

The expansion of the tort beyond its traditional three categories is modest at best. The Alabama Supreme Court in *Little* identified only a single time it has permitted an outrage claim outside the three historic fact patterns: a case in which the defendant doctor was asked to counsel a teenager over his parents' divorce and instead "began exchanging addictive prescription drugs for homosexual sex for a number of years, resulting in the boy's drug addiction." 72 So. 3d at 1173 (describing *O'Rear*). The situation in *Wilson* involved egregious comments made by the medical defendants to the plaintiff regarding her mother's "condition and her impending death, and to the effect that she was wasting resources by being in the hospital instead of dying at home," and even then the Court did not rule that an outrage claim could be based on such allegations but instead remanded to the trial court for its consideration of the possibility. 2017 WL 6397654 at *1, *3.

Whatever the fact pattern, the tort remains "viable only when the conduct is so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Little*, 72 So. 3d at 1173 (internal quotes omitted). Whether a fact pattern attains this rarefied level is a question of law for determination by the court. *Wilson*, 2017 WL 6397654 at *3; *accord id.* at *4 (Murdock, J., dissenting); *McGinnis v. American Home Mortgage Servicing, Inc.*, 817 F.3d 1241, 1258 (11th Cir. 2016) (Georgia law); *Lincoln v. Florida Gas Transmission Co. LLC*, 608 Fed. Appx. 721, 722 (11th Cir. 2015) (Florida law).

Comcast argues that the amended complaint fails to allege conduct that is outrageous in character and extreme in degree as required by Alabama law to state a claim for outrage. (Doc. 61 at 12). The Court agrees.

Distilled, the amended complaint alleges two forms of conduct by the fictitious defendants: rudeness and physically threatening movements. The former plainly cannot support his outrage claim. "[T]he tort of outrage does not recognize recovery for mere

9

insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Little*, 72 So. 3d at 1172 (internal quotes omitted); *see also Anderson v. Dolgencorp, LLC*, 2014 WL 5471933 at *4 (M.D. Ala. 2014) (comments that are merely "offensive and rude" will not sustain an outrage claim).

The movements the plaintiff finds physically threatening are the fictitious defendants' assumption of "threatening" and "fighting postures," their flanking him, and their movement relative to each other so that he could not keep both in view at once. There is no suggestion the fictitious defendants verbally indicated or offered violence, nor that they at any point touched the plaintiff or invaded his personal space. Their "fighting posture," whatever it was, was momentary, as the three entered the house for the benign purpose of viewing the laptop and wiring. Given their assignment, it is unsurprising that they moved around so as to examine the components that needed their attention, and there is no allegation that the plaintiff requested them to remain both in his eyesight at all times. The fictitious defendants' alleged conduct may be no cause for commendation, but neither does it approach even the furthest frontiers of this "extremely limited cause of action." *Little*, 72 So. 3d at 1172 (internal quotes omitted).

For the reasons set forth above, Comcast's motion to dismiss Count I as to it is due to be granted.

**B. Fraudulent Removal.**

Count Two alleges that all defendants agreed to hide the identities of the fictitious defendants from the plaintiff so as to remove this action to federal court, all as part of their plan to deny the plaintiff just compensation. (Doc. 40 at 4). The plaintiff considers this a "fraud upon the Court." (*Id*. at 18, 19, 21, 22).

Comcast argues that Count II fails to state a claim on which relief can be granted. (Doc. 61 at 11). For reasons stated in the Helmsman order, (Doc. 93 at 5-8),[9] the Court

---

[9] Comcast adopts and incorporates all arguments raised by the Helmsman defendants. (Doc. 61 at 14 n.1).

agrees.  For those reasons, Comcast's motion to dismiss Count II as to it is due to be granted.

### C. Fraudulent Concealment.

Count III is a variation on Count II.  While Count II asserts fraud in the removal itself, Count III alleges that, post-removal, the defendants have proactively concealed the identities of the fictitious defendants, including by cautioning present and former employees not to reveal who the fictitious defendants are.  (Doc. 40 at 5).

Comcast argues that Count III fails to state a claim on which relief can be granted.  (Doc. 61 at 11).  For reasons stated in the Helmsman order, (Doc. 93 at 8-9), the Court agrees.  For those reasons, Comcast's motion to dismiss Count III as to it is due to be granted.

### D. Fraud/Misrepresentation.

The amended complaint alleges that co-defendant Joy Howard was employed by co-defendant Helmsman Management Services, LLC ("Helmsman"), which provided claims management as an "intermediar[y]" for Comcast.  (Doc. 40 at 3, 20-21).  Count IV alleges that Howard "attempt[ed] to defraud" the plaintiff and break him so he would not pursue to the finish his quest for just compensation.  (Doc. 40 at 5).

Comcast argues that Count IV fails to plead fraud with the particularity demanded by Rule 9(b).  (Doc. 61 at 13).  For reasons stated in the Helmsman order, (Doc. 93 at 9-10), the Court agrees.  For those reasons, Comcast's motion to dismiss Count IV as to it is due to be granted.

### E. Willful/Negligent Hiring, Training and Supervision.

Count V alleges that the defendants were "willfully negligent" in their hiring practices and in not supervising and training employees.  (Doc. 40 at 5-6).  The balance of the amended complaint adds nothing to this skeletal allegation.

11

Comcast argues that Count V fails to state a claim on which relief can be granted. (Doc. 61 at 13). For reasons stated in the Helmsman order, (Doc. 93 at 11), the Court agrees. For those reasons, Comcast's motion to dismiss Count V as to it is due to be granted.

**F. Fraudulent Billing.**

Count VI alleges that the Comcast defendants defrauded the plaintiff by "running a fraudulent billing scheme" designed to punish him for seeking redress. (Doc. 40 at 6). The amended complaint alleges that, every time the plaintiff requested that his laptop be repaired, he received a bill for hundreds of dollars, far above the advertised rate he signed up for. Despite many hours with customer service, and despite their inability to explain what had happened to the plaintiff's original contract rate, he could not get the bill down to the advertised rate, though he did receive reductions in his bill. The last three times he challenged the high billing, he was told there was a $30 fee for a returned check; even though no one could provide any information about this check, the plaintiff was forced to pay the charge to avoid losing his internet connection. He was later told that the $30 was not for a bounced check but was an adjustment fee he was charged because he had overpaid a previous bill (because he had paid an inflated bill and then gotten it adjusted downward). Customer service eventually adjusted the plaintiff's billing to remove many of the erroneous charges, but his monthly bill was never returned to the advertised rate. (*Id*. at 13-14, 15-17).

Comcast argues that Count VI fails to allege fraud with the particularity required by Rule 9(b). (Doc. 61 at 13). The Court considers the question separately for the two forms of fraudulent billing the plaintiff has alleged: his monthly rate and the $30 charge.

In order to satisfy Rule 9(b), the plaintiffs must allege: "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *American Dental Association v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010) (internal quotes omitted).

It is clear the plaintiff alleges that he was billed in excess of the amount he understood he had agreed to pay, but the amended complaint fails to identify what was represented to him about what he would be billed. Nor does the amended complaint identify either the document(s) in which such representations were contained or, if the representations were oral, the person making them or the time or place they were made.[10] This claim therefore does not satisfy Rule 9(b).

The problems are similar for the plaintiff's other fraudulent billing claim. He is unhappy with the $30 charge, but he fails to identify any particular representation that the charge contradicted, much less the time and place of, or the person making, the misrepresentation. To the uncertain extent the plaintiff asserts the misrepresentation was that of customer service representatives telling him the charge was for a returned check, he fails to identify who told him this, or when, or how the misrepresentation misled him to his detriment. Finally, to the uncertain extent the plaintiff asserts fraud by omission, he fails to allege what exactly was omitted, when, where and by whom.

For the reasons set forth above, Comcast's motion to dismiss Count VI as to it is due to be granted.

### G. Intentional Infliction of Emotional Distress.

Count VII alleges that all of the defendants utilized their special skills, practices and customs to intentionally inflict emotional distress on the plaintiff. (Doc. 40 at 6). Unlike Count I, Count VII is not limited in scope to a particular incident (the visit from the fictitious defendants). Instead, Count VII appears to rely on all of the amended complaint's allegations regarding the conduct of the various defendants. Because the amended complaint alleges that the Helmsman defendants acted as "intermediaries" and "surrogates" for the Comcast defendants, (*id*. at 3, 4), the Court assumes that Count VII

---

[10] The amended complaint alleges that the plaintiff subscribed in May of 2016, (Doc. 40 at 12), so any representations presumably occurred in or before that month, which narrows but does not pinpoint the time the representations were made.

purports to hold Comcast responsible for all the conduct alleged in the amended complaint.

Comcast argues that the amended complaint fails to allege conduct that is outrageous in character and extreme in degree as required by Alabama law to state a claim for outrage. (Doc. 61 at 12). The Court agrees.

The Court has explained in the Helmsman order why the conduct made the basis of Counts II, III and IV cannot support an outrage claim. (Doc. 93 at 11-14). That reasoning applies equally here. The Court has explained above why the conduct made the basis of Count I cannot support an outrage claim, *see* Part II.A, *supra*, and that reasoning likewise applies here.

As discussed in Parts II.F and II.H, Counts VI and VIII are based on allegedly fraudulent conduct – overbilling the plaintiff, inserting a $30 charge for overpaying his bill, and deleting his requests for compensation for his laptop. Such conduct does not fall within the parameters of any of the three recognized categories of the tort outrage, and Alabama courts have rejected other outrage claims brought by customers.[11] The Court has explained in Part II.A the "extremely limited" nature of the tort of outrage, and the plaintiff has done nothing to explain how his situation – unpleasant as it may be for him – can succeed where those of others have failed.

For the reasons set forth above, Comcast's motion to dismiss Count VII as to it is due to be granted.

---

[11] *See DeLeon v. Kmart Corp.*, 735 So. 2d 1214, 1216-17 (Ala. 1998) (the defendant falsely accused the plaintiff customers of working for a competitor, pinned one customer against a shelf, and placed both customers in a room used to question shoplifters, where the interrogation continued and threats to call the police were made); *Empiregas, Inc. v. Geary*, 431 So. 2d 1258, 1259-60, 1261 (Ala. 1983) (the defendant erroneously removed the regulator from the plaintiff customer's LP gas tank and failed to return it, despite daily requests, during nine days of bitterly cold weather, with the result that the house temperature fell below freezing and all members of the family became ill).

### H. Fraudulent Falsification of Records.

Count VIII alleges that the Comcast defendants "constantly falsified their own internal records and accounts so as to erase any attempts that I made to receive just compensation and to stop the abuses." (Doc. 40 at 7). The amended complaint alleges that, when the plaintiff first contacted tech support after his Ethernet port was disabled, he was issued an escalation number. After tech support sent out a technician who confirmed the damage, the plaintiff's escalation number was canceled, even though he expected to be contacted about repairing or replacing his laptop. Eventually he called tech support, which sent out another technician to again confirm the damage. After the fictitious defendants' visit, the plaintiff's escalation number was canceled a second time. (Doc. 40 at 12-14).

Comcast argues that Count VIII fails to allege fraud with particularity. (Doc. 61 at 13). The Court agrees. No specific misrepresentation or omission is identified, nor its time and place, nor the person responsible, nor how the plaintiff was misled, nor what the defendant gained.

For the reasons set forth above, Comcast's motion to dismiss Count VIII as to it is due to be granted.

## III. Leave to Amend.

Comcast moves that the claims against it be dismissed with prejudice. (Doc. 61 at 1, 15). The Court agrees that such a dismissal is warranted.

The Court on motion previously dismissed the complaint for failure to satisfy Rule 8(a)(2), *Twombly* and *Iqbal*. The Court pointed out that the plaintiff's allegations were "little more than labels and conclusions, with virtually no factual information." (Doc. 34 at 13). The Court expressly informed the plaintiff that, in order to survive a second motion to dismiss, he would need to plead factual information regarding what was said and/or done that he considers to be fraudulent or otherwise improper and regarding the circumstances rendering the defendants' conduct extreme and outrageous. (*Id*.). The Court reminded the plaintiff that, because the tort of outrage reaches only the most

egregious of circumstances, he must plead factual content (not glib conclusions) showing such circumstances. (*Id*. at 16). The Court further cautioned the plaintiff that any fraud claim must be pleaded with particularity. (*Id*.). Finally, the Court warned the plaintiff that he would not be afforded limitless opportunities to present a legally acceptable pleading and that the Court would not rescue him from his failure to meet his pleading obligations. (*Id*. at 16-17).

The amended complaint adds nothing regarding Counts I and VI. Counts II and III are new, but they are also legally insupportable. Count IV adds only a few vague allegations regarding Howard's alleged fraud, and Count VIII adds only the vague conclusion that falsification of records occurred. Count VII adds only the vague allegations of Counts IV and VIII. Count V is new but, given the failure of the only tort claims against employees is also legally unsustainable. That the plaintiff, even after being schooled as to what he must plead in order to survive dismissal, failed to do so indicates he is unable to plead what the law requires him to plead. Nor does the plaintiff request additional opportunity to plead a viable claim.

For the reasons set forth above, the dismissal of the plaintiff's claims against Comcast will be with prejudice and without leave to amend.

## CONCLUSION

For the reasons set forth above, Comcast's motion to dismiss is **granted**. All claims against defendant Comcast Corporation are **dismissed with prejudice**.

DONE and ORDERED this 17th day of July, 2018.

                                          s/ WILLIAM H. STEELE
                                          UNITED STATES DISTRICT JUDGE